UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE MEDICAL PROTECTIVE COMPANY, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV01639 ERW |
| | ) | |
| JAMES E. BUBENIK, D.M.D., et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants James E. Bubenik and James E. Bubenik, D.M.D., P.C.'s Motion for Leave to File an Amended Answer to Plaintiff's Complaint for Declaratory Judgment [doc. #40], Defendants' Joint Motion for Summary Judgment [doc. #66], Plaintiff's Motion for Summary Judgment [doc. #70], and Plaintiff's Motion to Strike Exhibit O [doc. #88].

## **I. PROCEDURAL HISTORY**

Plaintiff, The Medical Protective Company, filed suit against Defendants James E. Bubenik, D.M.D. and James E. Bubenik, D.M.D., P.C. (collectively "Bubenik Defendants") for a declaratory judgment that the Bubenik Defendants materially breached the parties' professional liability contract. The present declaratory judgment action stemmed from a state court action in which the Bubenik Defendants were sued for malpractice by Joseph C. Johnston, individually and Mary Johnston through her guardian Joseph C. Johnston (collectively "Johnston Defendants"). A judgment was entered in favor of the Johnston Defendants in the underlying action, and against the Bubenik Defendants. The Johnston Defendants filed a motion to intervene in the action

1

before this Court, which was granted on January 17, 2007. Both Parties have filed motions for summary judgment; the Defendants and the third-party Defendants have filed a joint motion for summary judgment. Also pending is a motion to amend the answer and Plaintiff's motion to strike Defendants' Exhibit O. The Court will address all pending motions at this time.

## II. FACTUAL BACKGROUND

Defendant Dr. James E. Bubenik, D.M.D. ("Dr. Bubenik"), provided dental care to Mr. Henry Michael Johnston on January 19, 2005. During the procedure, which was performed in Dr. Bubenik's office under sedation, Mr. Johnston suffered serious injuries, was hospitalized and died on January 23, 2005. Mr. Johnston's surviving family members notified the Bubenik Defendants of a potential claim for damages against Dr. Bubenik and his corporation. The Bubenik Defendants immediately notified Plaintiff of potential liability resulting from Mr. Johnston's death. On August 23, 2005, the Johnston Defendants filed suit in state court against the Bubenik Defendants.

Plaintiff Medical Protective Company provided the Bubenik Defendants with professional liability insurance ("the policy" or "the contract"). Pursuant to the contract, they provided counsel to the Bubenik Defendants throughout the Johnston Action, up until the time of trial. The policy also contained what is generally referred to as a cooperation clause. It stated: "The insured shall at all times fully cooperate with the Company in any claim hereunder and shall attend and assist in the preparation and trial of any such action." Defs' Ex. A, Policy, 1.

On November 21, 2005, Dr. Bubenik responded to interrogatories filed by the Johnston Defendants by asserting his Fifth Amendment right against self-incrimination. In response to Dr. Bubenik's assertion of the Fifth Amendment, on December 20, 2005, the state court judge entered an order prohibiting Dr. Bubenik from testifying at trail, unless he withdrew his assertion of the

2

Fifth Amendment within a reasonable time prior to trial. On March 16, 2006, Dr. Bubenik appeared for his deposition, but again refused to answer any substantive questions, again asserting his rights under the Fifth Amendment. On May 12, 2006, Mr. Wilke, the attorney that had been retained on behalf of the Bubenik Defendants, filed an attorney suit report to Plaintiff, summarizing the Johnston action. In May, 2006, at the request of the Bubenik Defendants, the Plaintiff discharged Mr. Wilke from the Johnston action and retained the law firm of Lathrop & Gage, L.C.; Mr. Baldwin then took over the defense of the Bubenik Defendants. On July 5, 2006, Mr. Baldwin submitted a second attorney suit report.

On October 12, 2006, the Johnston case was scheduled for mediation. It is undisputed that Dr. Bubenik attended the mediation; Defendants assert that he was eager to provide information to Mr. Baldwin, but that Mr. Baldwin would not discuss the case with him. Plaintiff does not dispute this, but dispute that Dr. Bubenik could provide any useful information to Mr. Baldwin, because of his refusal to withdraw his assertion of the Fifth Amendment. Prior to the October 12, 2006 mediation, Plaintiff hand delivered a reservation of rights letter to the Bubenik Defendants. No settlement was reached during the mediation, and the case was set for trial on December 4, 2006. The case was tried before Judge Wallace, and judgment entered in favor of Defendants in the amount of $2,426,090.45, plus costs.

### III. MOTION TO AMEND ANSWER

On April 27, 2007, the Bubenik Defendants, filed the pending motion for leave to file an amended answer to Plaintiff's complaint. The Court did not rule on this motion at the time, because all of the Bubenik Defendants Counterclaims were stayed, pending the running of the statute of limitations on any potential criminal charges against Dr. Bubenik. The statute of limitations has now run, and therefore the Court will now address the Bubenik Defendants'

3

motion. The Bubenik Defendants want to amend their answer to add two additional affirmative defenses, waiver and estoppel.

Rule 15(a) states:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . .. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).

The Court notes that no objections have been filed to the Bubenik Defendants' motion. Furthermore, there is no potential for prejudice, as all Parties have fully briefed the issues of waiver and estoppel in their motions for summary judgment. Therefore, the Court grants the Bubenik Defendants' Motion to Amend their Answer.

## IV. MOTION TO STRIKE

The Court next considers Plaintiff's motion to Strike Exhibit O submitted with Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment. Plaintiff asserts that Exhibit O, a supplemental affidavit filed by Steven Leonard in support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("Leonard Affidavit"), lacks sufficient foundation, does not contain personal knowledge, and contains inadmissible hearsay. Defendants respond that the Leonard Affidavit fully complies with Rule 56, and in the alternative they request that the Court only strike those portions of the Leonard Affidavit which are objectionable.

Rule 56(e) states: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). The court may "consider only admissible evidence" and is prohibited from using "affidavits and depositions that [are] made without personal knowledge, consist[] of hearsay, or purport[] to

4

state legal conclusions as fact." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004). Inadmissable evidence "may not be used to support or defeat a motion for summary judgment." *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005). "Where an affidavit does not meet this standard, it is subject to a motion to strike." *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972).

The Leonard Affidavit is duly sworn, and states that the affiant is competent to testify. Therefore, the key question is whether the affidavit is based on personal knowledge, or whether it contains inadmissible hearsay. Specifically, paragraph 5 of the Leonard Affidavit states that:

> During the pendency of both the *Jaudon* and *Johnston* cases, I scheduled a meeting for attorney Dan Wilke and Dr. Bubenik to meet in my office, which they did. Dr. Bubenik provided Mr. Wilke with information concerning the circumstances in both the *Jaudon* and *Johnston* cases during this meeting. During the pendency of the *Jaudon* and *Johnston* cases, it was apparent to me that Dr. Bubenik was not only willing but anxious to provide information to Mr. Wilke concerning the circumstances surrounding both the *Jaudon* and *Johnston* cases.

*Defs. Response to Pl's Statement of Uncontroverted Material Facts*, Ex. 0, ¶5. Plaintiff challenges the statement that Dr. Bubenik provided Mr. Wilke with information concerning the circumstances of the two pending cases, as Plaintiff asserts that Mr. Leonard did not aver that he was present during the meeting, and even if he was present, the statements contain hearsay. Mr. Leonard testified that the information contained within the affidavit was based upon personal knowledge, and therefore the Court concludes that the statements in paragraph five comply with Rule 56(e). However, the Court must next determine whether the statement contains hearsay.

Hearsay is defined in the federal rules of evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Unlike the case cited by Plaintiff, the statements contained in the Leonard Affidavit do not contain hearsay. *See McSpadden*, 456 F.2d at 430.

5

The affidavit does not repeat what information was given, or any specific statements made by either Mr. Wilke or Dr. Bubenik. The statement is intended to support Defendants' position that Dr. Bubenik cooperated with Plaintiff, not for the truth of any specific communications. Fed. R. Evid. 801(c). Therefore, the Court concludes that the affidavit does not contain hearsay, and is admissible in support of Defendants' opposition to Plaintiff's motion for summary judgment.

## V. MOTIONS FOR SUMMARY JUDGMENT

### A. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

**B. DISCUSSION**[1]

---

[1] Due to the degree of overlap between the two pending summary judgment motions, the Court will not address each motion separately. The Court will ensure that all arguments, raised by the Parties in the two motions, are fully addressed, placing the burdens on the appropriate Parties in accordance with the summary judgment standard.

7

There are a number of issues raised by the Parties related to Plaintiff's obligation to indemnify the Bubenik Defendants; Plaintiff asserts that they are not required to indemnify because Dr. Bubenik violated the cooperation clause. The first question is whether, under Missouri law, the assertion of the Fifth Amendment is a per se violation of the cooperation clause. If there is no per se rule, the Court will then determine whether the facts of this case are sufficient to present a genuine issue of material fact regarding whether Dr. Bubenik failed to cooperate under the terms of the Insurance contract. If the Court finds either in favor of Plaintiff on the coverage issue, or finds that there is a genuine issue of material fact such that the question needs to be heard at trial, the Court must then address Defendants' affirmative defenses of waiver and estoppel.

Under Missouri law, a cooperation clause in an insurance contract is valid and enforceable. *Riffe v. Peeler*, 684 S.W.2d 539, 542 (Mo.Ct.App. 1984); *see also Hendrix v. Jones*, 580 S.W.2d 740, 742 (Mo. 1979). The Missouri Supreme Court specifically rejected the notion of a per se rule in the context of failure to appear at trial, stating that "an insurer must prove 'substantial prejudice' before it can deny coverage because of breach of a 'cooperation clause.'" *Riffe*, 684 S.W.2d at 542 (quoting *Hendrix*, 580 S.W.2d at 743-44). The Missouri Court of Appeals further held that the insurer must exercise reasonable diligence to secure the insured's cooperation. *Riffe*, 684 S.W.2d at 542; *see also Carlson v. Lloyd's of London*, 435 S.W.2d 42, 45 (Mo.Ct.App. 1968) ("It should be kept in mind that the insurer has the burden . . . to prove that the insured's actions constituted a failure to cooperate.").

Despite the lengthy arguments made by the Plaintiff to the contrary, Missouri law clearly states that there is no per se rule for what constitutes a violation of the cooperation clause. *Hendrix*, 580 S.W.2d at 743-44. Plaintiff attempts to distinguish *Hendrix*, arguing that the

holding is limited to the failure of the insured to appear at trial. The Court does not read *Hendrix*, as being so limited. The *Hendrix* court specifically stated that when determining if the insured's "failure to attend the trial *or testify* was prejudicial" the facts of the case must be considered. *Hendrix*, 580 S.W.2d at 743 (emphasis added). The Court rejects Plaintiff's suggestion that the Court should adopt a per se rule that the assertion of the Fifth Amendment constitutes prejudice to the insurer.

The Court next looks at whether the evidence presented by the Parties shows that Dr. Bubenik's assertion of the Fifth Amendment was prejudicial to the Plaintiff as a matter of law, or whether a material issue of fact exists such that summary judgment is not appropriate. To show a violation of a cooperation clause, the insurer, in this case the Plaintiff, has the burden of proving (1) material breach of the cooperation clause, (2) the existence of substantial prejudice, and (3) the exercise of reasonable diligence to secure the insured's cooperation. *Union Insurance Company of Providence*, 261 F.Supp.2d at 1152. The Court will address each factor in turn.

First, the Court must determine whether there has been a material breach of the cooperation clause. It is undisputed that Dr. Bubenik did not testify at his deposition, nor did he respond substantively to interrogatories, nor did he testify at trial. However, he did provide the Plaintiff with copies of Mr. Johnston's medical records, he agreed to meet with retained counsel, and he was present for his deposition, the mediation, and trial. Therefore, the key question is whether the failure to testify in his own defense constitutes a material breach of the cooperation clause. Plaintiff cites to the case of *Wiles v. Capitol Indemnity Corporation*, for support of its position that Dr. Bubenik's refusal to testify constituted a material breach of the cooperation clause. 215 F.Supp.2d 1029, 11032 (E.D.Mo. 2001). However, in that case the cooperation clause at issue specifically required the insured to submit to an examination under oath. *Wiles*,

9

215 F.Supp.2d at 1031 ("In the instant case, the Court finds that Defendant insurer has demonstrated a material breach of the cooperation clause with respect to Plaintiff's obligation to submit to an examination under oath."). *Wiles* does not answer the question presented in the present case; namely whether a general obligation to cooperate requires an insured to testify under oath. The cooperation clause in the case at bar does not contain an explicit requirement that the insured testify under oath. Furthermore, the Missouri Court of Appeals held that even where there was an explicit requirement that the insured testify under oath, the court found that "the evidence presented in connection with the insured's obligation to answer questions under oath merely presented a question for the jury." *Farm Bureau Town and Country Insurance Company of Missouri v. Crain*, 731 S.W.2d 866, 871 (Mo.Ct.App. 1987). The *Wiles* court distinguished the case before it from *Crain*, stating: "the Court finds *Crain* distinguishable, however, as in that case the insured submitted to the examination, refusing to answer only a few questions concerning his financial affairs." 215 F.Supp.2d at 1032, n.7. The Court does not find *Wiles* controlling in this case. 215 F.Supp.2d at 1031. Additionally, The *Crain* court held that "[i]f an insured willfully *and without excuse* refuses discovery, an insurer may refuse to go forward with an adjustment and claim immunity from suit. . .." 731 S.W.2d at 871 (emphasis added). Dr. Bubenik has asserted an excuse, his Fifth Amendment right against self-incrimination. Another case cited by Plaintiff, *MetLife Auto & Home v. Cunningham*, is also insufficient to deter this Court's reliance on *Crain*'s holding that violation of the cooperation clause is a question of fact for the jury. 731 S.W.2d at 871. *Cunningham* found that assertion of the fifth amendment was not a sufficient excuse for failing to comply with one's contractual obligations. *MetLife Auto & Home v. Cunningham*, 797 N.E.2d 18, 22 (Mass.Ct.App. 2003) ("His assertion of rights under the Fifth Amendment . . . afforded him no sanctuary from his obligation to cooperate, for it is not

by the Commonwealth or by MetLife that Cunningham is compelled to furnish evidence against himself, but by his own contractual obligations." (internal citations omitted)). However, *MetLife Auto & Home* was interpreting a cooperation clause that required the insured to cooperate, and to "help in collecting and giving evidence." *Id.* at 21, n.5.

The contract in the present case does not contain a specific obligation to testify, and furthermore, Missouri courts have recognized that generally violation of a cooperation clause is a fact question. *Crain*, 731 S.W.2d at 871. Lastly, the Court notes that Dr. Bubenik's refusal to testify was not without excuse, he refused to testify in order to preserve his right under the United States Constitution against self-incrimination. The Massachusetts case cited above supports a finding of a violation, however, that case is not controlling, and based on a review of Missouri precedent, the Court cannot conclude that an assertion of the Fifth Amendment requires the finding of a violation, especially considering the contract language at issue. There is no specific requirement that the insured provide testimony or give evidence, it simply states that the insured must cooperate. Therefore, the Court concludes that Defendants have shown that there is a genuine issue of material fact regarding Dr. Bubenik's violation of the cooperation clause. Both Parties' motion on this issue are denied.

Even though the Court has determined that there is a factual issue remaining regarding Dr. Bubenik's refusal to testify, the Court must still address the question of prejudice.[2] Defendants argue that Dr. Bubenik's testimony at trial would not have changed the outcome of the trial, and therefore, the Plaintiff is unable to show prejudice. Plaintiff argues to the contrary, that the failure

---

[2]If the Court finds that Plaintiff cannot show prejudice as a result of the alleged breach, then Defendants are entitled to summary judgment. If Plaintiff successfully shows, as a matter of law, that Dr. Bubenik's actions caused prejudice, there still remains a question for the jury as to whether Dr. Bubenik's actions violated the cooperation clause.

11

of Dr. Bubenik to participate significantly prejudiced the Plaintiff, not only because of his failure to testify at trial, but also in his failure to provide information to Plaintiff in preparation for trial, and his failure to participate in discovery.

"In determining whether the failure of an insured to attend trial or to testify was prejudicial to the insurer, the courts have generally considered the importance of the insured's testimony to the defense." *Hendrix*, 580 S.W.2d at 743 (internal quotation omitted). Plaintiff cites to the case of *Quisenberry v. Kartsonis*, for support of its position that there is no need to show that the verdict would have been different had the insured cooperated. 297 S.W.2d 450, 454 (Mo. 1957) ("We observe that, in our view, a showing of prejudice, if that be necessary, cannot mean that insurer must show that it sustained a pecuniary loss or that the jury's verdict would have been different if the true facts had been disclosed."). However, that case fails to reach a conclusion on whether a showing of prejudice is required, and what that would look like, as the case addresses false statements by the insured. *Id*. ("[W]e need not pause to consider what the applicable rule (as to the necessity to show prejudice . . .) should be . . .. That is because it is our judgment, that upon a finding by the jury [of willful misrepresentation], it follows as a matter of law that such conduct constituted an unexcused lack of cooperation."). The facts of the case before the Court are very different, and the general rule asserted in *Hendrix* is controlling, that is the importance of the insured's testimony to the defense. 580 S.W.2d at 743.

The Court finds a material issue of fact exists as to whether the Plaintiff was prejudiced by Dr. Bubenik's actions. While the Court is cognizant of the potential importance of a party's testimony, it is not always true that a party's testimony will aid in the party's case. Defendants have presented evidence that supports their assertion that regardless of Dr. Bubenik's testimony, there was no defense to be made on the question of liability. For example, Mr. Baldwin, Dr.

12

Bubenik's defense attorney in the Johnston case, stated in a report to Plaintiff, that even without considering Dr. Bubenik's assertion of the fifth amendment, the defendants case was devastating. Mr. Baldwin stated later in that same report that there was zero possibility of a defense verdict. In order to show prejudice, Plaintiff has presented evidence of the state court order which forbade Dr. Bubenik from testifying, and also forbade the use of expert testimony that was in anyway reliant upon information received from Dr. Bubenik. The Court concludes that whether Plaintiff was prejudiced by Dr. Bubenik's assertion of the fifth amendment presents a genuine issue of material fact; Plaintiff has presented evidence of prejudice, namely the entering of sanctions against it in the state court action and the lack of information to form a defense, however, Defendants have responded with sufficient evidence of a material issue of fact that the facts of the underlying action were so devastating, that Dr. Bubenik's testimony would have had no impact on the outcome of the case.

The last question that the Court must address in determining whether Plaintiff was within its rights to refuse payment under the policy for the Bubenik Defendants alleged breach of the cooperation clause, is whether Plaintiff diligently sought Dr. Bubenik's cooperation. *Union Insurance Company of Providence*, 261 F.Supp.2d at 1152. This requirement necessitates little discussion. Plaintiff sent numerous letters to Dr. Bubenik, and spoke with both Dr. Bubenik and his personal counsel, requesting Dr. Bubenik's full cooperation, including his testimony at deposition and at trial. On each occasion, Dr. Bubenik responded that he would not testify because of advice of counsel to assert the Fifth Amendment. As Plaintiff correctly notes, the Plaintiff was not required to harass the insured into testifying, rather it was only required to use reasonable diligence is. *Union Insurance Company of Providence*, 261 F.Supp.2d at 1152; *see*

*also Hendrix*, 580 S.W.2d at 742. Therefore, the Court concludes that Plaintiff satisfied this requirement.

Having found that summary judgment is inappropriate on the question of prejudice, the Court must address Defendants' Motion for Summary Judgment on the affirmative defenses of waiver and estoppel. While there is a great deal of overlap between these two defenses, they are not identical, and therefore the Court will address each separately.

The general rule for estoppel states that: "when a liability insurer conducts a defense of an action brought against the insured with knowledge of the facts and without giving notice of a reservation of rights, the insurer is thereafter precluded from setting up a defense of non-coverage." *Martinelli v. Security Insurance Company of New Haven*, 490 S.W.2d 427, 432 (Mo.Ct.App. 1973). The Missouri Court of Appeals further lists two essential elements of estoppel: (1)" the party asserting it must, in some manner, suffer a legal detriment, change his position for the worse and be prejudiced[;]" and (2) "there must be a showing of reliance-that the injured party relied on the conduct of the insurer or was misled by it to his prejudice." *Id.*; *see also Tinch v. State Farm Insurance Company*, 16 S.W.3d 747, 751 (Mo.Ct.App. 2000) ("This defense consists of three elements: (1) an admission, statement, or act by the person to be estopped that is inconsistent with the claim that is later asserted and sued upon; (2) an action taken by a second party on the faith of such admission, statement or act; and (3) an injury to the second party which would result if the first party is permitted to contradict or repudiate his admission, statement or act.").

The first issue is whether there was any inconsistent admission, statement , or act by the Plaintiff. *Tinch*, 163 S.W.3d at 751. Missouri law has squarely rejected any claim that the failure of an insured to immediately withdraw from an action because of non-cooperation, can form the

14

basis of an inconsistent statement or act. *See Riffe*, 684 S.W.2d at 543 ("Riffe's argument, from a pragmatic standpoint, appears to be that Allstate should be penalized, i.e., precluded from denying coverage, because it diligently attempted to secure Peeler's cooperation."). Defendants cannot assert that Plaintiff failed to immediately reserve its rights upon knowledge of Dr. Bubenik's assertion of the Fifth Amendment, when Plaintiff had an obligation to diligently pursue Dr. Bubenik's cooperation. Therefore, Plaintiff's continued defense of the Bubenik Defendants, after Dr. Bubenik asserted the Fifth Amendment, is not an inconsistent act or statement. However, Defendants argue a second basis for estoppel, that they were prejudiced by Plaintiff's actions in the prior Jaudon action.[3] Specifically, Defendants argue that the Bubenik Defendants relied to their detriment on Plaintiff's continued defense of the Jaudon case, even after Dr. Bubenik had asserted the Fifth Amendment. The Court is unpersuaded by this argument. Each case defended is different and raises different legal questions. The testimony shows that Plaintiff determined that in the Jaudon case, it was in the best interest of Plaintiff, as well as the Bubenik Defendants, to settle the case when the opportunity arose. The fact that Plaintiff took a different approach in the Johnston action is insufficient to show an inconsistent position. Each claim filed with an insurance provider is assessed on its own merits. The Court further notes that "[e]stoppel is not a favorite of the law and will not arise unless justice to the rights of others demands it." *Tinch*, 16 S.W.2d at 751. The Court finds no basis for estoppel in this case.[4]

---

[3]Approximately six months prior to the incident at issue in the underlying Johnston action, the Plaintiff insurance company defended the Bubenik Defendants in the Jaudon case. That case also involved the death of one of Dr. Bubenik's patients, while the patient was being treated under sedation. Dr. Bubenik also asserted the Fifth Amendment in that case. However, unlike this case, the Plaintiff never issued a reservation of rights letter, and eventually settled the case for an undisclosed amount.

[4]It is unnecessary to address the next two requirements of estoppel, as Defendants have failed to show any inconsistent action that could form the basis of estoppel.

Waiver is a similar, but distinct legal doctrine from estoppel, and unlike estoppel, no showing of prejudice is required for a finding of waiver. *Brown v. State Farm Mutual Insurance Co.*, 776 S.W.2d 384, 388 (Mo. 1989) ("Prejudice plays no part in long-accepted definitions of waiver; it is the voluntary relinquishment of the right to rely on the contractual provision which forms the basis of waiver."). As with the discussion of estoppel, the key problem to the success of this defense is the obligation that an insurance company attempt to achieve compliance through reasonable diligence. *Union Insurance Company of Providence*, 261 F.Supp.2d at 1152. Defendants must prove that Plaintiffs' voluntarily relinquished their rights to rely on the cooperation clause. *Brown*, 776 S.W.2d at 388. Plaintiff repeatedly contacted Dr. Bubenik, as well as Dr. Bubenik's personal counsel, and informed him of the importance of full cooperation. Plaintiff's attorney noted on several occasions the difficulties that would be presented by Dr. Bubenik's failure to testify at trial, and finally, at mediation, Plaintiff issued a reservation of rights letter, stating that they would only continue to defend the Bubenik Defendants under a reservation of rights. This does not evidence a voluntary relinquishment of Plaintiff's right to rely on the cooperation clause, to the contrary it shows Plaintiff's compliance with the requirement that it diligently pursue its insured's cooperation.

### C. CONCLUSION

The Court concludes that the question of a breach of the Bubenik Defendants' contractual obligation to cooperate is not appropriately resolved on summary judgment. There remains material issues of fact regarding the obligations placed on Dr. Bubenik under the contract, to what extent he was required to testify at his deposition and at trial, and whether he otherwise cooperated with the Plaintiff. Furthermore, there remains a genuine issue of fact regarding the prejudice to the Plaintiff as a result of any breach. Therefore, both Plaintiff's and Defendants'

16

motions for summary judgment on liability under Count I are denied.  The Court also finds that there is no material issue regarding Defendants' affirmative defenses of waiver and estoppel. Defendants have presented insufficient evidence to support a finding in their favor on these two defenses, and therefore Defendants' motion for summary judgment on this basis is also denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants James E. Bubenik and James E. Bubenik, D.M.D., P.C.'s Motion for Leave to File an Amended Answer to Plaintiff's Complaint for Declaratory Judgment [doc. #40] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion for Summary Judgment [doc. #66] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [doc. #70] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Exhibit O [doc. #88] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Joint Motion to Supplement Response to Plaintiff's Motion to Strike Exhibit O [doc. #91] is **GRANTED.**

Dated this 12th Day of February, 2008.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE